UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| TAMMY YANEZ, as Administrator of the <br> Estate of BRITTNEY SHILLINGBURG <br> <br> Plaintiff, <br> <br> v. <br> <br> CHRISTINE WALKER, et al. <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 5:24-cv-00025-JHY <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Defendants Crystal Caruso-Wilson LPN ("Nurse Caruso"), Sara Henson LPN ("Nurse Henson"), and Allison Palmer CNA ("CNA Palmer"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and (6), file this Memorandum in Support of their Motion to Dismiss the Complaint filed by plaintiff Tammy Yanez ("Yanez"), as Administrator of the Estate of Brittney Shillingburg ("Shillingburg"), and state as follows:

**I.      INTRODUCTION AND FACTS**

Plaintiff Yanez' Complaint relates to the medical care provided to Shillingburg while she was incarcerated at the Rappahannock, Shenandoah, Warren County Regional Jail ("RSW"). On October 18, 2022, Shillingburg was incarcerated at RSW. Yanez alleges that Shillingburg had previously been diagnosed with congenital adrenal hyperplasia that was recorded during a previous incarceration at RSW. (ECF 1, ¶¶ 5, 8). It is not alleged that Shillingburg advised staff of such condition upon her intake on October 18, 2022. The Complaint alleges that Shillingburg required medication for her condition. (*Id.*, ¶ 10). Yanez alleges that Shillingburg refused to take the medication for her condition because she did not want it "floated." (*Id.*).

1

Plaintiff alleges that on October 25, 2022, Dr. Silas Culver from UVA called RSW to advise that he was concerned that Shillingburg had not been taking her medication as prescribed, that her family told him that this was due to the medication being floated, and that this was a life-saving medication, which note was taken by co-defendant Christine Walker LPN. (ECF 1, ¶ 11). Yanez further alleges that nothing in the available medical records demonstrates that Nurse Walker communicated this to anyone, or that Dr. Culver ever spoke to a medical doctor. (*Id.*, ¶ 12).

On October 25, 2022, Nurse Walker noted that Shillingburg refused her life-saving medication, despite speaking to her about the importance of taking the medication, and that Shillingburg would agree to take it, "if water was put on them right before taking," and not sitting in water beforehand. (*Id.*, ¶ 13). Plaintiff does not explain why Shillingburg refused this medication and does not allege that the medication being "floated" had any impact on its efficacy.

On October 26, 2022, Dr. Culver called the jail, spoke with the Director of Nursing James Sokol ("Nurse Sokol"), and indicated that the medication should not be floated (*Id.*, ¶ 14). Yanez alleges that Nurse Sokol told the nursing staff that the medication should not be floated, and spoke with other jail officials who agreed that the medication would no longer be floated. (*Id.*, ¶ 15). Plaintiff alleges that afterwards Shillingburg took the medication. (*Id.* ¶ 16).[1] Plaintiff alleges that since Shillingburg had not been taking her medication, she went into adrenal crisis on October 26, 2022 (*Id.*, ¶ 17).

Yanez alleges that reports were made to Nurse Henson and Nurse Caruso that Shillingburg was suffering from various symptoms, but that none of these "appears" to have been communicated to a medical doctor, and that she was given Mylanta, water, and Gatorade and told that she would see a doctor in the morning. (*Id.*, ¶ 18). Yanez alleges that Shillingburg did not see

---

[1] The medical records from RSW show that Shillingburg even refused her medication on October 27, 2022 when it was <u>not</u> floated, and again refused her medication the next day.

a doctor on October 27, 2022. (*Id.*, ¶ 19).[2] Yanez further alleges that on October 28, 2022, Nurse Walker saw Shillingburg and noted at 7:20 a.m. that she said she was cold, had low energy, nausea, and difficulty breathing, and that Nurse Walker did not report symptoms to a doctor. (*Id.*, ¶¶ 20-21). Plaintiff alleges that Shillingburg deteriorated throughout the day of October 28, 2022. Shillingburg was given water by a guard at 2:56 pm, and then at 3:38 pm was found not responsive. (*Id.*, ¶¶ 22-24). Chest compressions were started until EMS arrived and continued, and then Shillingburg was transported to Winchester Medical Hospital where she continued to decline. (*Id.*, ¶¶ 24-26). Her family decided to "transition to comfort measures," and Shillingburg passed away afterwards. (*Id.*, ¶ 26). Plaintiff alleges the autopsy report indicated that her cause of death was "complications of congenital adrenal hyperplasia" (*Id.*, ¶ 27). Yanez alleges that Shillingburg suffered from symptoms of adrenal crisis, and that increasing Shillingburg's medication by 2-3 times would have prevented her deterioration, and that if she were unable to ingest the medication or the increased dosage did not alleviate her symptoms, her transfer to the hospital would have been ordered by an objectively reasonable physician. (*Id.*, ¶ 30).

As to defendants Henson and Caruso, plaintiff alleges that "reports were made" to them on October 26, 2022, that Shillingburg did not have an appetite, was lightheaded and nauseous, and felt acid in her throat and stomach, and claims that this was not communicated to any doctor, and that they told Shillingburg that she was to see a doctor on October 27, 2022. (*Id.*, ¶ 18). As to defendants Caruso and Palmer, plaintiff alleges that they "interacted" with Shillingburg on October 27, 2022, and were informed that Shillingburg was exhausted and having trouble standing, and claims that this was not communicated to a doctor. (*Id.*, ¶ 19). Plaintiff does not allege that Caruso, Henson, or Palmer saw plaintiff on October 28, 2022. (*See generally*, ECF 1).

---

[2] This is not supported by Shillingburg's medical records, which show that she did see at least one physician's assistant and a doctor on that date.

Yanez alleges that the defendants violated Shillingburg's Fourteenth Amendment rights and committed medical malpractice. She seeks compensatory damages in excess of $1,000,000.00, costs, prejudgment and post judgment interest, attorneys' fees, and punitive damages. (*Id.*, ¶ 61).

## II. ARGUMENT

Yanez's Complaint fails to state a claim upon which relief can be granted, and it should be dismissed. The allegations are insufficient to show any violation of constitutional rights by Caruso, Henson, and Palmer, and furthermore, they are entitled to immunity under the facts alleged. Accordingly, defendants' Motion to Dismiss should be granted.

### A. Standard

Under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  A complaint is insufficient if it merely offers, " 'labels and conclusions' " or " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678, quoting *Twombly,* 550 U.S. at 555, 546.  The court does not have to accept legal conclusions in the form of factual allegations. *Twombly*, 550 U.S. at 555. Additionally, the court, "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), which may include a motion raising sovereign immunity as a defense, the plaintiff has the burden of establishing the existence of subject matter jurisdiction and the complaint should be dismissed if there is no subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 & 653 (4th Cir.

1999); *see also Hussein v. Miller*, 232 F. Supp. 2d 653, 655 (E.D. Va. 2002); *Haley v. Virginia Dept. of Health*, 2012 WL 5494306, at *2-3 (W.D. Va. Nov. 13, 2012).

      B.      **Plaintiff fails to state a claim for violation of the Fourteenth Amendment with respect to medical treatment.**

Plaintiff's allegations of medical negligence fail to state a constitutional claim, and defendants' motion to dismiss should be granted. Medical negligence is insufficient as a matter of law to state a constitutional claim for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (holding that the court will not intervene where the allegations concerning treatment involve negligence, mistake, or difference of opinion); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (claims of inadequate medical care or negligence/malpractice are insufficient to state constitutional violation); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (claims of inadequate medical care or negligence/malpractice are insufficient to state constitutional violation). Moreover, an inmate's disagreement with the course of treatment, or disagreement with denial of treatment, provided by medical staff cannot support a valid Eighth Amendment claim. *Jackson v. Sampson*, 536 F. Appx. 356, 357 (4th Cir. 2013); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

Based upon this case law, defendants' Motion to Dismiss should be granted. Yanez explicitly alleges that Shillingburg repeatedly refused treatment. (ECF 1, ¶¶ 10, 13). Shillingburg refused medication that was provided to her, claiming that she did not like that it was floated with water. There are no allegations that the medication was not effective when taken that way. This is a disagreement with the course of treatment, and a disagreement with the course of treatment fails as a matter of law to state a constitutional claim for deliberate indifference.

Furthermore, plaintiff cannot show deliberate indifference with respect to her claim that defendants Nurse Caruso, Nurse Henson, and CNA Palmer; plaintiff alleges that they were

5

negligent and committed malpractice when they allegedly failed to vague signs of fatigue, nausea, and lack of appetite to a medical doctor (ECF 1, ¶ 40-49; 55-56). Plaintiff clearly alleges negligence and therefore, as a matter of law, her claims are insufficient to state a claim for deliberate indifference.

Considering further the deliberate indifference analysis, whether under the Eighth Amendment or Fourteenth Amendment,[3] plaintiff fails to state a claim. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("even though [plaintiff's] claim arises under the Fourteenth Amendment, we have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs") (citations omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). For alleged deliberate indifference to medical needs, first there must objectively be a "serious" medical condition at issue. *Mays*, 992 F.3d at 300. Second, subjectively, the prison official must have acted with a "sufficiently culpable state of mind" showing deliberate indifference to health or safety. *Farmer*, at 834; *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991).

To show deliberate indifference, the defendant must have had "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer*). Furthermore, "it is not enough than an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

---

[3] Shillingburg appeared for a hearing and was convicted on October 28, 2022.

Plaintiff Yanez cannot show that these defendants knew of a serious medical condition and the excessive risk, and then acted with deliberate indifference to that knowledge. Plaintiff does not make any allegation that these defendants actually knew that Shillingburg was diagnosed with any particular condition, or that defendants knew of any excessive risk based upon the general symptoms of fatigue, loss of appetite, and nausea. Shillingburg only alleges that defendants "should have known" that there was an adrenal condition in notes from a prior incarceration and that they should have known of a risk based on vague symptoms. (ECF 1, ¶ 8). It is not alleged that Caruso, Henson, and Palmer had such knowledge, which is required under binding precedent, and plaintiff's claim fails as a matter of law. Furthermore, Caruso, Henson, and Palmer did not see Shillingburg on October 28, 2022. Considering the facts alleged, plaintiff cannot show that Nurse Caruso, Nurse Henson, or Palmer knew of a serious medical condition and disregarded an excessive risk.

    **C.**    **Plaintiff's claims are barred by sovereign immunity.**

The Complaint does not specify whether the claims against Caruso, Henson, or Palmer are made in their official or individual capacity. With respect to any official capacity claims against the defendants, immunity applies; and with respect to the negligence and medical malpractice claims, immunity applies.

RSW is an immune entity, and the defendants are also immune. *Haleem v. Quinones*, 2017 WL 4400767 (W.D. Va. Sept. 30, 2017) (holding regional jail immune); *Dowdy v. Pamunkey Reg'l Jail Auth.*, 2014 WL 2002227 (E.D. Va. May 15, 2014) (holding regional jail immune); *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984) (employees of immune body also immune).

Regional jails have been created in Virginia and given purposes and powers, including but not limited to the public purposes of running a jail, and the officers of regional jails have law

7

enforcement powers. *See* Va. Code §§ 53.1-95.7, 53.1-95.8, 53.1-95.17; *Pamunkey*, at *3. The RSW is the jail for the counties of counties of Rappahannock, Shenandoah, and Warren. Operation of a jail is clearly a governmental function, and a municipal entity is immune from suit in performing governmental functions. *Pamunkey*, at *3 ("The Virginia Supreme Court has clearly held that the operation of a jail is a governmental function, for which a municipal corporation is immune from suit.") (citing *Franklin v. Town of Richlands*, 161 Va. 156, 158, 170 S.E. 718, 719 (1933)).

"An employee's immunity derives from the entity for which the employee works, and the employee has sovereign immunity only while performing functions for which the locality itself has immunity ... Employees of cities, towns, and other local entities, however, only have immunity when performing governmental functions." *Pamunkey*, at *3. The Virginia Supreme Court, in Messina, articulated a four-part test to determine whether an employee is immune, taking into consideration "(1) the nature of the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control exercised by the state over the employee, and (4) whether the alleged negligent act involved judgment and discretion." *Messina*, 228 Va. at 301. Analyzing the four elements articulated in Messina, the Court in Pamunkey held that employees of a regional jail were performing governmental functions in jail operations. *Pamunkey*, at *3-4. As to the second and third elements, "both the state government (through regulations) and the Authority itself have a great interest in—and control over—the housing of inmates and the proper operation of a jail." *Id.* at *4. In *Pamunkey*, the element which this court found dispositive was whether the alleged actions involved the judgment and discretion. *Id.* Here, the first three elements are the same as Pamunkey. As to the fourth element, these defendants had

8

to decide how to manage a prisoner's medical care, and therefore their actions necessarily involved discretion. Accordingly, immunity applies, and plaintiff's Complaint should be dismissed.

### D. Qualified immunity applies.

Qualified immunity also applies to any claim in an individual capacity, as there was no constitutional violation. There can be no liability for civil damages if the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As discussed above, there is no violation of plaintiff's 14th Amendment rights. Yanez acknowledges in her Complaint that Shillingburg received medical treatment from these defendants, that she received medical treatment from defendant Nurse Walker, and that she refused treatment for his medical issue. Plaintiff disagrees with the medical treatment provided, but that is not sufficient to state a constitutional violation. Accordingly, qualified immunity applies, and plaintiff's Complaint should be dismissed.

Qualified immunity is intended to protect government officials "from undue interference with their duties and from the potentially disabling threats of liability." *Johnson v. Holmes*, 204 F. Supp. 3d 880, 885 (W.D. Va. 2016). The first step is whether the actions violated a constitutional right, and the second is whether such right was clearly established at the time. *Id.* To be clearly established, the constitutional right must be so clear such that a reasonable official would know that what he/she was doing violated such right. A "right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (citation omitted). The *Booker* court further stated that, "[t]he unlawfulness of the official's conduct must be 'apparent' in 'light of pre-existing law.'" *Id.* Moreover, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.*

9

As discussed above, plaintiff has not stated any violation of Shillingburg's constitutional rights.  Furthermore, the facts do not show a clearly established right.  Accordingly, qualified immunity applies to defendants.

### III.   CONCLUSION

Plaintiff Yanez's Complaint fails to state a claim upon which relief can be granted, and it should be dismissed. Furthermore, immunity applies to the defendants. As such, their Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice.

WHEREFORE, defendants respectfully request that this Court grant their Motion to Dismiss, and that an Order be entered dismissing plaintiff's Complaint, with prejudice.

**NURSE CRYSTAL CARUSO-WILSON, NURSE SARA HENSON, NURSE ALLISON PALMER**

By: /s/ Debra S. Stafford_____
Counsel

Debra S. Stafford (VSB No. 43175)
HUDGINS LAW FIRM, P.C.
2331 Mill Road, Suite 100
Alexandria, VA 22314
(703) 739-3300 telephone / (703) 739-3700 facsimile
dstafford@hudginslawfirm.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on September 4, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a true copy of the foregoing to the following:

    Seth R. Carroll (VSB No. 74745)
    Commonwealth Law Group, LLC
    3311 West Broad Street
    Richmond, VA 23230
    (804) 999-9999 telephone / (866) 238-6415 facsimile
    scarroll@hurtinva.com

                                          /s/ Debra S. Stafford_____
                                          Counsel